UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEWISH CENTER FOR AGED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06-CV-1739 JCH |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOUSING AND URBAN DEVELOPMENT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant United States Department of Housing and Urban Development's ("HUD") Motion to Dismiss (Doc. No. 9), filed December 13, 2006. The matter is fully briefed and ready for a decision.

## BACKGROUND

In February 2001 Jewish Center for Aged ("JCA") and a related[1] entity JCA Support Co.[2] ("JCA Support") undertook a program to finance, construct, and operate a 276 bed nursing home ("Nursing Home") in Town and Country, Missouri on land owned by JCA ("Property"). (Compl., Doc. No. 1 ¶ 6). On February 21, 2001, JCA and JCA Support engaged in a series of transactions to facilitate this plan. (Id. at ¶ 7-13).

First, JCA leased JCA Support the Property pursuant to a ground lease ("Ground Lease").

---

[1]Although the Court does not know the exact corporate structure of these two entities, it is clear that they are closely related and share a common decision making source.

[2]JCA and JCA Support are both benevolent corporations under the laws of the state of Missouri. (Compl. ¶ 1,3).

- 1 -

(Id. at ¶ 7-8). This lease had a term of fifty-five years and required JCA Support to pay a yearly rent of one dollar. (Id. at ¶ 8(a), citing Ex. A § 3,4). The Ground Lease contained three other provisions of note. First, it stated that:

> 25. <u>Permitted Leasehold Mortgages</u>. Notwithstanding anything else herein, [JCA Support] shall have the right during the Term to encumber, by a Leasehold Mortgage (as hereinafter defined) all of [JCA Support's] right, title and interest in the Real Property and Improvements subject to the provisions of this Lease; provided, however, that the same shall be in all respects subordinate and inferior to [JCA's] right, title and interest as provided in this Lease, and that the holder, mortgagee, grantee or secured party under such Leasehold Mortgage ... shall be subject to all of the rights and obligations of [JCA] herein contained in this Lease. For purposes hereof, a "Leasehold Mortgage" shall be any mortgage, deed of trust, security agreement, collateral assignment or other encumbrance of [JCA Support's] leasehold interest in the Real Property and Improvements pursuant to HUD 232 Mortgage Insurance for Residential Care Facilities Program.

(Id. at § 25). Second, it stated that:

> 26. <u>Tenant Default under Leasehold Mortgages</u>. ... Additionally, notwithstanding anything herein, [JCA] and [JCA Support] agree that, in the event of a failure of [JCA Support] to pay any amount due under the Leasehold Mortgage, and in the further event that HUD or any Leasehold Mortgagee determines to pursue any remedy under the Leasehold Mortgage or the HUD Addendum which could affect the possession of the Real Property, [JCA] will be given notice ("Purchase Notice") of such failure to make payment and will have a first right to acquire [JCA Support's] leasehold interest together with the Improvements and other assets of [JCA Support] related thereto for a purchase price equal to the then fair market value thereof. [JCA] shall not be required to assume any liabilities of [JCA Support]. Such fair market value shall be determined by a licensed or otherwise accredited appraiser selected by [JCA], subject to reasonable approval by HUD .... If [JCA] declines to exercise its option, HUD ... may declare [JCA Support] in default under the Leasehold Mortgage and may take any and all action permitted by such agreement and by law. [JCA] must give notice to ... HUD ... of its intention to exercise its right to acquire [JCA Support's] Leasehold interest pursuant to the terms hereof within thirty (30) days of receipt of the Purchase Notice and shall thereafter have one hundred twenty (120) days to close the purchase.

(Id. at § 26). Finally, it contained the "HUD addendum," which allowed JCA Support to obtain a loan insured by HUD and that, if HUD acquires title to the Leasehold interest, it may buy title to the

Property for $6,351,392,000. (Id. at Ex. D §§ i-ii).

On February 21, 2001, JCA Support leased the Nursing Home to JCA for a term of fifty-five years and a mortgage equal to the monthly payment required to service the $55,000,000 construction loan.[3] (Id. at Ex. B §§ 1,3). This lease stated that it was "subordinate to any secured financing ... established by" JCA Support and subject to the Ground Lease. (Id. at §§ 1, 2(e)). Also on this date, JCA Support entered into a Deed of Trust Note ("Note") for $55,000,000 with Gershman Investment Corp ("Gershman"). (Compl. ¶ 11). All of these documents were properly recorded. (Id. at ¶ 12-13).

JCA Support failed to make timely payments and Gershman assigned its rights and interests in the Note to Greystone Servicing Corporation Inc. ("Greystone") as part of a plan agreed upon by Gershman, Greystone, HUD, JCA, and JCA Support. (Id. at ¶ 14-15). Greystone decided to exercise its rights and HUD now holds the Note. (Id. at ¶ 17).

After receiving no payments on the Note for roughly a year, HUD placed notice in the Federal Register that it was taking bids on the Note, which would be sold on December 6, 2006. Notice of HUD-Held Multifamily and Healthcare Loan Sale, 72 Fed. Reg. 67625 (Nov. 22, 2006). HUD also employed The Debt Exchange to help advertise the auction. (Compl. ¶ 21-22).

JCA filed its Verified Complaint on December 6, 2006. (Doc. No. 1). In Count I, it asks for a declaratory judgment[4] stating that § 26 of the Ground Lease provides it with a right of first purchase of the Nursing Home, that the Note is subordinate to the Ground Lease, that HUD's actions have triggered the Ground Lease, and that it is entitled to Purchase Notice. (Id). Count II asks this Court to order injunctive relief. (Id.). On the same day, JCA filed a Motion for a Temporary Restraining

---

[3]Servicing the debt requires a payment of $296,208.61 per month. (Compl., Ex. C).

[4]under 28 U.S.C. § 2201.

Order to stop HUD's auction. (Doc. No. 2). On December 8, 2006, after a hearing on the matter, the Court issued a temporary restraining order and scheduled a preliminary injunction hearing for December 27, 2006.[5] (Order, Doc. No. 4). Later that day, HUD cancelled its sale.[6] (Memo. in Supp., Doc. No. 10 Ex. A ¶ 4). HUD filed this Motion to Dismiss on December 13, 2006. (Doc. No. 9).

## **MOTION TO DISMISS STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) requires a court to dismiss a claim if the court lacks subject matter jurisdiction over it; however, dismissal for lack of subject matter jurisdiction will not be granted lightly. Wheeler v. St. Louis Southwestern Ry. Co., 90 F.3d 327, 329 (8th Cir. 1996). Dismissal is proper when a facial attack on the alleged basis for subject matter jurisdiction over Plaintiff's Complaint shows there is no basis for jurisdiction. Id.

The standards applied to a Rule 12(b)(1) motion to dismiss are the same as those that apply to a Rule 12(b)(6) motion to dismiss. Vankempen v. McDonnell Douglas Corp., 923 F. Supp. 146, 147 (E.D. Mo. 1996) (citing Satz v. ITT Fin. Corp., 619 F.2d 738, 742 (8th Cir. 1980). In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A cause of action should not be dismissed for failure to state a claim unless, from the face of the Complaint, it appears beyond a reasonable doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Jackson Sawmill Co., Inc. v. United

---

[5] Both parties consented to this twenty day temporary restraining order. See Fed. Rule of Civ. Proc. 65(c).

[6] After learning that HUD had canceled the sale, the Court and the parties held a telephone conference on December 14, 2006. During this conference, HUD agreed not to take any action on the Note for sixty days. The Court has cancelled the preliminary injunction hearing scheduled for December 27, 2006.

States, 580 F.2d 302, 306 (8th Cir. 1978). Thus, a motion to dismiss is likely to be granted "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (internal quotations and citation omitted).

## DISCUSSION

HUD contends no subject matter jurisdiction exists because no case or controversy is present.[7] Specifically, HUD asserts that JCA's claims became moot when HUD cancelled its auction of the Note. JCA contends that this case meets two exceptions to the mootness doctrine.

Federal Courts are courts of limited jurisdiction and can only hear actual "cases or controversies" as defined under Article III of the Constitution. Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998). This requirement applies at all stages of litigation and, when a case no longer presents an "actual, ongoing case or controversy," it is moot and the Court has no jurisdiction over it. Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994). This requirement applies with "equal force to actions for declaratory judgment as it does to actions seeking traditional coercive relief." Hickman, 144 F.3d at 1142 (quoting Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993)).

Exceptions exist to the mootness doctrine, two of which are relevant here. See Hohn v. United States, 262 F.3d 811, 817 (8th Cir. 2001) (listing four exceptions) (overruled on other grounds). First, a defendant's "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Charleston Hous. Auth. v. United States

---

[7]HUD also argues that JCA has not invoked a jurisdictional statute that waives sovereign immunity and HUD has not voluntarily waived its immunity. The Court will not consider this argument because HUD improperly raised it for the first time in its reply brief.

Dep't of Agric., 419 F.3d 729, 740 (8th Cir. 2005)(quoting Friends of the Earth, Inc v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)). In this situation, defendant faces the "heavy burden" of showing "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. The possibility of recurrence need not be certain, but it cannot be purely remote or speculative. Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006). Courts will find behavior is not reasonably expected to recur when defendant has shown a willingness to comply with the plaintiff's demands and has not acted in a hostile or defiant manner. See United States Dep't of Agric. v. FLRA., 876 F.32d 50, 52 (8th Cir. 1989). Courts also find behavior will not recur when the government affirmatively guarantees it will not engage in the complained about behavior for a substantial period of time. In re Operation of Mo. River Sys. Litig., 421 F.3d 618, 631-32 (8th Cir. 2005) (government averred that it would not act in the "foreseeable future").

The Court finds that this case fits into the "voluntary cessation" exception to the mootness doctrine. There is no argument that HUD voluntarily ceased the action that gave rise to this controversy. Additionally, HUD has not meet its "heavy burden" of making it "absolutely clear" that a sale will not take place in the future. HUD has always represented to the Court that it is not bound by the Ground Lease. Second, HUD has made no assurances that it will not attempt to sell the Note after the sixty day period ends. See Lankford, 451 F.3d at 503 (finding that because State could reinstate opposed Medicaid plan, controversy was not moot); see also South Dakota v. Ubbelohde, 330 F.3d 1014 (8th Cir. 2003) (holding case not moot when likely that army corp of engineers would want to use reservoir at issue again and no assurance to the contrary existed); cf. Nome Eskimo Cmty. v. Babbit, 67 F.3d 813, 815-17 (9th Cir. 1995) (holding government affirmatively represented

that it would not attempt additional mineral rights sales for another seven years rendered case moot). HUD's present, and previous actions,[8] show it will attempt to sell the Note in the future.[9] See Charleston, 419 F.3d at 740 (finding housing authorities repeated attempts to quiet title indicate it would continue in contested action). Furthermore, as shown by the bids HUD received on the sale, there is a ready market for the property. Cf. Babbit, 67 F.3d at 815-17 (finding action moot partially due to no bids being made on mineral rights).

A second exception is when the case is capable of repetition, yet evades review. Nat'l Right to Life Political Action Comm. v. Connor, 323 F.3d 684, 691 (8th Cir. 2003). To meet this narrow exception, the following elements must both exist: (1) there be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration too short to be fully litigated before becoming moot. Iowa Protection & Advocacy Servs. v. Tanager, Inc., 427 F.3d 541, 544 (8th Cir. 2005).

The Court finds that this exception is met as well. As stated above, there is a reasonable expectation HUD will try to sell the Note again. Second, this dispute will likely evade review. A previous Eight Circuit opinion is particularly instructive. There, the Court held that the evading review exception to the mootness doctrine applied to a dispute over where to build a domed NFL football stadium even though the local NFL franchise moved to Arizona. Mo. Coalition for the Env't v. Corps of Eng'rs of United States Army, 866 F.2d 1025, 1030 (8th Cir. 1989) (abrogated on

---

[8]At the temporary restraining order hearing, both parties alluded to a previous negotiation in 2006 where a deal between HUD and a buyer, who guaranteed that JCA could continue operating the nursing home indefinitely, fell through.

[9]This apparent eagerness seemingly stems from the amount of capital this Note has tied up. At the temporary restraining order hearing, HUD informed the court that no payment had been made on the Note, which is still worth roughly $51,000,000, in over a year.

different grounds by Goos v. ICC, 911 F.2d 1283, 1292 (8th Cir. 1990)). Specifically, the Court found that St. Louis was actively pursuing another NFL franchise, seeking to locate any new stadium at the disputed site despite staunch community opposition, and that any meaningful review would be thwarted because the threat of litigation would scare off potential franchises. Id. Similarly, the Eighth Circuit applied this exception where a preliminary injunction that barred the release of water from a reservoir during rainbow smelt spawning season would never last long enough to allow meaningful judicial review. Ubbelohde, 330 F.3d at 1023.

Here, JCA has made it clear that it will file for an injunction any time HUD attempts to sell the Note before its rights under the Ground Lease are determined. It is also clear that these repeated injunctions will likely scare off interested buyers. See Mo. Coalition for the Env't, 866 F.3d at 1025. Although HUD has stated that it will provide JCA with notice thirty days before any sale, the giving of notice is tangential to the real issue: whether HUD, in attempting any remedy it has under the Note, must follow the Ground Lease's provisions. If the Court were to dismiss this case, HUD might attempt another action that prompts another lawsuit. The Court finds that HUD's motion to dismiss must be denied because the controversy before the Court is not moot.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 9) is **DENIED**.

Dated this 18th day of December, 2006

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE